**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

RICHARD SCHAFER, on behalf of himself
and all others similarly situated,

                Plaintiff,

v.

DIRECT ENERGY SERVICES, LLC, a
Delaware Limited Liability Company,

                Defendant.

Case No. 6:19-cv-6907 (FPG)

CLASS ACTION

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS**

1.     On November 25, 2015, Plaintiff Richard Schafer enrolled with Direct Energy for a 12-month fixed-rate natural gas plan. *See* Ex. A (Wood Decl.) at ¶ 6.

**Response no. 1:   Admit.**

2.     Mr. Schafer's initial 12-month fixed rate plan was governed by a contract contained in a document referred to herein as the "Welcome Contract Materials." *See* Ex. A-1.

**Response no. 2:   Admit that the "Welcome Contract Materials" contain a Welcome Letter addressed to Mr. Schafer, a Customer Disclosure Statement, and a copy of Direct Energy's gas Terms and Conditions. Deny any legal conclusions that Direct Energy seeks to draw from these documents.**

3.     The "Welcome Contract Materials" were automatically generated by Direct Energy's LetterWriter system as a single pdf on November 30, 2015. *See* Ex. A (Wood Decl.) at ¶¶ 10, 12; Ex. B (Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 3:   Admit.**

4.     Upon being generated, the Welcome Contract Materials were automatically saved in Direct Energy's customer records for Mr. Schafer. *See* Ex. A (Wood Decl.) at ¶¶ 10, 12; Ex. B (Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 4:   Admit.**

5.     Exhibit A-1 is a true and correct copy of the Welcome Contract Materials. *See* Ex. A (Wood Decl.) at ¶ 8; Ex. A-1; Ex. B (Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 5:   Admit that these are the Welcome Contract Materials as stored on Direct Energy's servers.**

6.     On or about November 30, 2015, the Welcome Contract Materials were mailed[] to Mr. Schafer in a single envelope. *See* Ex. B (Rosenblum Decl.) at ¶¶ 5–12; Ex. D (Sprague Decl.)

at ¶¶ 3–8; Ex. C (Smothers Decl.) at ¶¶ 3–8, 9, 11; Ex. C-1.

**Response no. 6:   Deny. Mr. Rosenblum declared that a batch associated with Mr.
Schafer's "Welcome Contract Materials" was sent to R.R. Donnelley for processing. *See*
Rosenblum Decl. ¶ 12. Nothing in Direct Energy's documents shows that anything was sent
to "Richard Schafer" or to Mr. Schafer's address. Further deny that whether a contract is
mailed with other non-contract materials is a material fact in determining whether that
contract satisfies § 349-d(7).**

7.      After Mr. Schafer's natural gas plan reached the end of its initial term, Mr.
Schafer's natural gas service was governed by a contract contained in a document referred to
herein as the "Renewal Contract Materials." *See* Ex. A (Wood Decl.) at ¶ 7; Ex. A-2.

**Response no. 7:   Admit that the "Renewal Contract Materials" contain a
Residential Renewal Notice addressed to Mr. Schafer and a copy of Direct Energy's gas
Terms and Conditions. Deny any legal conclusions that Direct Energy seeks to draw from
these documents.**

8.      The Renewal Contract Materials were generated as a single pdf document by
Direct Energy's LetterWriter system on October 17, 2016. *See* Ex. A (Wood Decl.) at ¶¶ 11, 12;
Ex. B (Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 8:   Admit.**

9.      Upon being generated, the Welcome Contract Materials were automatically saved
in Direct Energy's customer records for Mr. Schafer. *See* Ex. A (Wood Decl.) at ¶¶ 11, 12; Ex. B
(Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 9:   Admit.**

10.     Exhibit A-2 is a true and correct copy of the Renewal Contract Materials. *See* Ex.

A (Wood Decl.) at ¶ 8; Ex. A-2; Ex. B (Rosenblum Decl.) at ¶¶ 5–8.

**Response no. 10: Admit that these are the Renewal Contract Materials as stored on Direct Energy's servers.**

11.    On or about October 17, 2016, the Renewal Contract Materials were mailed[] to Mr. Schafer in a single envelope. *See* Ex. B (Rosenblum Decl.) at ¶¶ 5–12; Ex. D (Sprague Decl.) at ¶¶ 3–8; Ex. C (Smothers Decl.) at ¶¶ 3–8, 10, 12; Ex. C-2.

**Response no. 11: Deny. Mr. Rosenblum declared that a batch associated with Mr. Schafer's "Renewal Contract Materials" was sent to R.R. Donnelley for processing. *See* Rosenblum Decl. ¶ 12. Nothing in Direct Energy's documents shows that anything was sent to "Richard Schafer" or to Mr. Schafer's address. Deny that whether a contract is mailed with other non-contract materials is a material fact in determining whether that contract satisfies § 349-d(7).**

12.    Because Mr. Schafer failed to cancel or renew on a new fixed rate, his account was automatically converted to a month-to-month variable rate on November 28, 2016. *See* Ex. A (Wood Decl.) at ¶ 7; Ex. A-2.

**Response no. 12: Admit that Direct Energy automatically converted Mr. Schafer's fixed-rate plan to a variable rate, and subsequently raised his rates by as much as 100% over the next 2+ years. *See* Ex. A to Asch. Decl.**

13.    Mr. Schafer incurred a variable-rate supply charge on November 28, 2016, and continued to incur variable rate charges for the remainder of his time as a Direct Energy customer. *See* Ex. A (Wood Decl.) at ¶ 7; Ex. A-2.

**Response no. 13: Admit that Direct Energy charged Mr. Schafer a variable rate for natural gas supply on November 28, 2016, and continued to charge Mr. Schafer a variable**

rate for natural gas supply for the remainder of his time as a Direct Energy customer. **Deny that the first date when Direct Energy charged Mr. Schafer a variable rate for electricity is material to whether Mr. Schafer timely filed his claims.**

14.     Mr. Schafer never saw the Welcome Contract Materials or the Renewal Contract Materials. *See* Ex. E-11 (Schafer Dep.) at 50:9–51:4 (Mr. Schafer's testimony that he never saw the Renewal Notice or any Terms with two columns); *id.* at 38:7–16, 41:4–7.

**Response no. 14:  Deny. As an initial matter, Plaintiff denies that his testimony in the *Forte* matter as to his electricity contract with Direct Energy is material to whether Direct Energy's natural gas contracts comply with § 349-d(7). Further deny Direct Energy's characterization of Mr. Schafer's testimony in the *Forte* matter. Mr. Schafer testified that—sitting there at his deposition—he did not recall seeing the documents Direct Energy sent to him. *See e.g.* Schafer Depo., attached as Ex. E to Asch. Decl., 38:11 ("I really don't recall this."); *id.* at 41:6–7 ("I don't recall ever seeing this, honestly."); *id.* at 49:16–23 ("Not specifically, no. I don't recall seeing [the Renewal Notice] . . . . No, I mean specifically this letter. The thing—the reason I'm hesitant in the answer is—is I may have seen something that had—much similar to this that said renewal."); *id.* at 50:25 ("I don't recall it.").**

15.     If Mr. Schafer had read the Welcome Contract Materials, he "could have understood that at the end of the fixed rate, [his] rate would go variable." Ex. E-11 (Schafer Dep.) at 47:8–11; *id.* 48:19–49:8 ("Q. Having read [the Disclosure Statement's term for renewal of the agreement] today, you quickly understood it, right? A. Correct."); *id.* 41:11–42:5.

**Response no. 15:  Deny. As an initial matter, Plaintiff denies that his testimony in the *Forte* matter as to his electricity contract with Direct Energy is material to whether Direct Energy's natural gas contracts comply with § 349-d(7). Further deny Direct Energy's**

characterization of Mr. Schafer's testimony in the *Forte* matter. Mr. Schafer read through

the Electricity Terms and Disclosure Statement, as directed by defense counsel:

> Q.    Do you see the pricing language that explains what
> will happen to your price after the initial term expires?
>
> A.    Not offhand. Maybe if I read it all, I'll see that.
>
> Q.    Take your time.
>
> A.    I'm sorry. Okay, I'll -- let me read. What was the
> question? What am I looking for? That it would be variable?
> Is that what I'm looking for?
>
> Q.    The question was do you see the pricing language that
> explains what will happen to your price after the initial
> term expires.
>
> A.    I think I see what you're referring to.
>
> Q.    Okay. It says: After the initial term and during the
> renewal term, your rate per kilowatt hour as well as the
> daily fee will both be variable.
>
> A.    Yes.

*Id.* at 41:24–42:18. Mr. Schafer testified that he saw the text that defense counsel guided

him to see by reading that text to him out loud. And even while being guided by defense

counsel to read the Electricity Disclosure Statement, Schafer testified he was "not sure" he

was even looking at the right section—and he was, in fact, not looking at the correct

section:

> Q. Do you see the section that says what will happen when
> the term ends and the agreement renews?
>
> A. I'm not really quite sure. I see that it says process
> for the recession -- rescission of the agreement without
> penalty. It says customer may contact us, and it has a
> phone number, to rescind within three business days. It
> says early termination fee, $99.
>
> Are we -- am I still looking for more? You asked me do I
> see a section, and I'm not sure whether I do see -- whether
> I see exactly what you're saying.

```
Q. Do you see there's a box that says Provisions for
Renewal of the Agreement --

A. Yes.

Q. -- in bold?

A. Yes.
```

*Id.* **at 44:6–23. And Mr. Schafer denied "easily" understanding what the Electricity**

**Disclosure Statement said, even when directed to read it at his deposition:**

```
Q. So if you had read this in 2015, you could have easily
seen that your rate would be fixed for 14 months, right?

MR. ASCHENBRENER: Objection, form.

THE WITNESS: I -- yes.

BY MS. WIZIG:

Q. And you would have easily seen that the fixed rate was
6.29 cents per kilowatt hour.

MR. ASCHENBRENER: Objection, form.

THE WITNESS: Yes, except for the easily part because of the
size of the type and all the other stuff that preceded it.
I might never have gotten to this page.

BY MS. WIZIG:

Q. But if you had looked at this disclosure --

A. If I had looked at it, yes, the answer to the question
is yes.

Q. Okay. If you -- just to make it clear for the court
reporter, if you had looked at this disclosure statement,
you could have easily seen what your rate would be, right?

MR. ASCHENBRENER: Objection, form. You may answer.

THE WITNESS: I could have seen. I -- I -- it bothers me the
word easily. That's all.
```

*Id.* **44:24–45:12.**

16.     If Mr. Schafer had read the Renewal Contract Materials, he "would have known

that [his] rate would vary month to month." Ex. E-11 (Schafer Dep.) at 51:10–53:19.

**Response no. 16: Deny.** As an initial matter, Plaintiff denies that his testimony in the *Forte* matter as to his electricity contract with Direct Energy is material to whether Direct Energy's natural gas contracts comply with § 349-d(7). Further deny Direct Energy's characterization of Mr. Schafer's testimony in the *Forte* matter. Mr. Schafer read through the Electricity Renewal Notice, line by line, directed by defense counsel:

```
Q.   Mr. Schafer, looking at that renewal notice, do you
see where it tells you what your renewal price will be?

A.   Price, renewal price. I -- I see it says varies month
to month. Is that what you're referring to here, or is
there a price on here?

Q.   It says renewal price varies month to month, right?

A.   Yes, I see that. That's why I was looking for a
number. I see, yes.

Q.   And you found that rather quickly, right?

A.   Well, not as quickly as some other things, but yes,
within reason -- reasonably quickly.

Q.   When you looked to see what the price would be, you
found it.

MR. ASCHENBRENER: Objection, misstates prior testimony.
Objection, form.

THE WITNESS: Yes, I -- except I don't see the price. I see
the way the price changes.

BY MS. WIZIG:

Q.   So you see that once your fixed rate expires, the
price will vary month to month, right?

A.   I see the -- the word agreement -- rate -- renewal
price, and then it says varies month to month. So
therefore, there's no price, but it tells me that whatever
it is, it varies month to month.

Q.   And do you see where it says Product Type?

A.   Yes, I do.

Q.   And that says variable, too, right?
```

A.    Correct.

Q.    And it says: Rate changes month to month based on business and market conditions.

A.    Yes, it says that.

Q.    So in two places in this box, it tells you that your rate will be variable, right?

A.    I see the word variable twice, absolutely. I see variable and varies, yes.

Q.    And does it tell you when your variable rate will start?

A.    Oh, at the very last -- I'm sorry, you're going down there. It says Term Start/End Date, and then it says: Start 1/28/17 and continues month to month. Is that what you're referring to?

Q.    So if you had received this and read it in 2016, you would have known that your rate would vary month to month, right?

A.    Yes.

**_Id._ at 51:10–53:13.**

Dated: June 20, 2022

Respectfully submitted,

KamberLaw, LLC

By:    **s/ Michael Aschenbrener**

One of the attorneys for Plaintiff, individually and on behalf of a class of similarly situated individuals

Scott A. Kamber
Michael Aschenbrener
**KamberLaw, LLC**
201 Milwaukee Street, Suite 200
Denver, CO 80246
Telephone: (303) 222-0281
skamber@kamberlaw.com
masch@kamberlaw.com

Adam C. York
**KamberLaw, LLC**
220 N Green Street
Chicago, IL 60607
Telephone: (212) 920-3072
ayork@kamberlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: June 20, 2022                    By:  _s/ Adam C. York_____