UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD SCHAFER,

                                                      Plaintiff,

                                                                                           Case # 19-CV-6907-FPG

v.

                                                                                           DECISION & ORDER

DIRECT ENERGY SERVICES, LLC,

                                                      Defendant.
_____

## INTRODUCTION

Following discovery on Plaintiff Richard Schafer's individual statutory claim under New York General Business Law § 349-d(7), Direct Energy Services, LLC ("Direct Energy") moved for summary judgment. ECF No. 50. Schafer opposes the motion, ECF No. 52, and Direct Energy has filed its reply. ECF No. 53. For the reasons that follow, Direct Energy's motion is GRANTED.

## BACKGROUND

"New York deregulated its natural-gas and electricity markets in 1996. This move allowed consumers to choose from a variety of companies selling residential energy, in addition to traditional utilities." *Schafer v. Direct Energy Servs., LLC*, 481 F. Supp. 3d 141, 143 (W.D.N.Y. 2020) (internal quotation marks omitted) [hereinafter "*Schafer I*"]. "These companies are known as 'energy services companies.' Direct Energy is one such company that began to offer residential energy after deregulation." *Id.*

On December 16, 2019, Schafer filed this putative class action against Direct Energy. After motion practice, only one of his claims remains: a statutory violation of New York General

1

Business Law § 349-d(7).[1]  That provision requires "every contract for energy services" and "all marketing materials provided to prospective purchasers of such contracts" to "clearly and conspicuously identif[y]" all "variable charges."  N.Y. Gen. Bus. Law § 349-d(7).  In his amended complaint, Schafer alleged that Direct Energy's contracts insufficiently disclosed the existence of variable charges in violation of this provision.

In March 2020, Direct Energy moved to dismiss Schafer's amended complaint, arguing that its variable-rate disclosures were sufficient under New York law.  There were two sets of contract materials at issue: the first set "was sent [to Schafer] when he initially [enrolled in] Direct Energy's fixed-rate plan," and the second was sent "[b]efore Schafer's fixed-rate plan was set to expire."  *Schafer I*, 481 F. Supp. 3d at 147, 150.  In *Schafer I*, the Court agreed with Direct Energy as to both sets of materials, concluding that "Direct Energy's disclosures pass muster under § 349-d(7)."  *Id.*

On appeal, the Second Circuit vacated and remanded the matter, after concluding that the Court had impermissibly "considered evidence outside of" the amended complaint—specifically, the contract materials that "Direct Energy [had] attached to its declarations in support of its motion to dismiss."  *Schafer II*, 845 F. App'x at 82.  The Second Circuit wrote: "If, given the arguments and the documents submitted by the parties, the District Court believed that the matter was ripe for summary judgment, then it should have converted Direct Energy's motion to dismiss into one for summary judgment under Rule 12(d).  Only then should the District Court have evaluated whether Direct Energy's purported communications sufficed to meet its statutory obligations under

---

[1] This Court dismissed Schafer's other claim, unjust enrichment, in *Schafer I*.  *See Schafer I*, 481 F. Supp. 3d at 151.  On appeal, Schafer did not challenge the dismissal of that claim.  *See Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 81 n.1 (2d Cir. 2021) (summary order) [hereinafter "*Schafer II*"].

2

Section 349-d(7) as a matter of law and in light of the undisputed facts." *Id.* at 83.  The Second Circuit did not address the substance of this Court's reasoning.

On remand, the Court denied Direct Energy's supplemental motion to dismiss and directed the parties to proceed to discovery "concerning Schafer's *individual* Section 349-d(7) claim." *Schafer v. Direct Energy Servs., LLC*, No. 19-CV-6907, 2021 WL 5851189, at *5 (W.D.N.Y. Dec. 9, 2021) [hereinafter "*Schafer III*"].  Discovery is now complete.

The following is derived from the record submitted to the Court.  On November 25, 2015, Schafer enrolled in Direct Energy's 12-month "fixed-rate natural gas plan."  ECF No. 52-1 ¶ 1. The parties dispute what materials Direct Energy sent to Schafer during their contractual relationship.

Direct Energy has submitted evidence that on or about November 30, 2015, it sent Schafer a set of documents that it refers to as the "Welcome Contract Materials."  ECF No. 50-2 ¶ 6.  Direct Energy has provided sworn declarations that describe the process by which Direct Energy generates and mails the "Welcome Contract Materials."  Direct Energy uses a program called "LetterWriter," which combines a pre-set template with an individual customer's data to generate the "Welcome Contract Materials," which consist of (1) a welcome letter, (2) the terms and conditions, and (3) a customer disclosure statement.  ECF No. 50-3 at 20-26, 37.  That PDF is saved to an internal customer database and sent to Direct Energy's print vendor for printing.  *Id.* at 5, 37-38.  The print vendor places each customer's set of "Welcome Contract Materials" into an envelope and deposits them with the U.S. Postal Service for delivery.  *Id.* at 38.  The print vendor then sends back "daily mailing reports" that confirm what was printed, processed, and mailed that day.  *Id.* at 41.  The declarations and attached exhibits show that this process was followed with respect to Schafer's "Welcome Contract Materials."  *See id.* at 41-42, 46.  This evidence

3

sufficiently supports Direct Energy's factual assertion that "[o]n or about November 30, 2015, the Welcome Contract Materials were mailed to Mr. Schafer in a single envelope," ECF No. 50-2 at 2, and that Schafer thereafter received those materials in the same form that they were generated and mailed. *See Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) ("New York law has established a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures." (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

In response, Schafer denies Direct Energy's factual assertion, arguing that Direct Energy's evidence only proves that his "Welcome Contract Materials" was sent to the print vendor for processing, not that those materials were actually sent to him. ECF No. 52-1 at 3. As an initial matter, the Court notes that, in his responsive Rule 56 Statement, Schafer does not actually cite any evidence denying receipt.[2] *See id.* Regardless, Direct Energy submitted evidence that it received confirmation from its print vendor that Schafer's materials were processed and mailed in accordance with its usual practices. *See* ECF No. 50-3 at 41, 46. Direct Energy was not obligated to produce the individual person at the print vendor who mailed Schafer's materials. *See Meckel*, 758 F.2d at 817 (rejecting the argument that "there was insufficient proof of mailing because the employee who actually did so was not produced," since "the proof of the regular course of business in this regard sufficed" (internal ellipses and quotation marks omitted)).

Given the absence of evidence to support Schafer's position, the Court takes as undisputed Direct Energy's assertion that it mailed to Schafer the "Welcome Contract Materials" on or about

---

[2] Schafer enrolled in both Direct Energy's electricity plan and natural-gas plan in November 2015. ECF No. 50-3 at 5. At his deposition in a related case involving Direct Energy's electricity plan, Schafer could not recall whether he received the electricity plan's "Welcome Contract Materials." ECF No. 52-2 at 75-76. To the extent this could be construed to mean Schafer also does not recall seeing the gas plan's "Welcome Contract Materials," it would be insufficient to create a genuine issue of material fact. *See F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses . . . do not create genuine issues of material fact.").

4

November 30, 2015, and that those materials were mailed to—and received by—Schafer in a single envelope and in the same form as they exist in Direct Energy's customer database.[3] *See* ECF No. 50-3 at 20-26.

Next, the parties dispute whether Schafer ever read the "Welcome Contract Materials" that he received. Direct Energy cites Schafer's deposition testimony in the related electricity-plan case to assert that he "never saw the Welcome Contract Materials." ECF No. 50-2 at 3. Schafer denies this assertion but does not cite any evidence that he did, in fact, review the materials. ECF No. 52-1 at 5. Therefore, there appears to be no evidence, one way or the other, that Schafer read or reviewed the "Welcome Contract Materials" he received in connection with his enrollment in Direct Energy's natural-gas plan. The Court proceeds with its analysis on that basis.

Direct Energy asserts that, when Schafer's 12-month fixed-rate plan was about to expire, it mailed him "Renewal Contract Materials." For the same reasons discussed above with respect to the "Welcome Contract Materials," the Court takes as undisputed Direct Energy's assertions that it mailed to Schafer the "Renewal Contract Materials" on or about October 17, 2016; and that those materials were mailed to—and received by—Schafer in a single envelope and in the same form as they exist in Direct Energy's customer database. *See* ECF No. 50-3 at 29-34; *see also id.* at 5-6, 38, 42-43, 69. Likewise, there appears to be no evidence, one way or the other, that Schafer read or reviewed the "Renewal Contract Materials" he received in connection with the renewal of his Direct Energy natural-gas plan. *See* ECF No. 52-1 at 5.

Because Schafer did not take any action after Direct Energy notified him of the renewal, Schafer's gas plan "was automatically converted to a month-to-month variable rate" plan. ECF No. 50-2 at 2. Direct Energy began charging Schafer under his variable-rate plan on November

---

[3] Consequently, the Court need not address Direct Energy's arguments regarding Schafer's alleged judicial or evidentiary admissions. *See* ECF No. 50-1 at 20-24.

28, 2016. *Id.* at 3. Schafer made his first payment under the variable rate-plan on December 22, 2016, and ultimately paid $2,204.73 for natural gas supply while under the variable-rate plan. ECF No. 52-2 at 3.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

Direct Energy argues that summary judgment is appropriate on several grounds. Because they are dispositive, the Court need only address two of those grounds. First, the "Welcome Contract Materials" and "Renewal Contract Materials" comply with Section 349-d(7). Second, Schafer has presented insufficient evidence that he was injured "by reason of" Direct Energy's alleged violation of Section 349-d(7).

### I. Direct Energy's "Welcome Contract Materials" and "Renewal Contract Materials" Comply with Section 349-d(7)

In *Schafer I*, this Court held that the "Welcome Contract Materials" and "Renewal Contract Materials" that Direct Energy attached to its motion to dismiss provided "adequate disclosure of

6

the variable rate for purposes of § 349-d(7)." *Schafer I*, 481 F. Supp. 3d at 149-50. The Court therefore dismissed Schafer's statutory claim. *See id.* at 151. The Second Circuit's remand order did not cast any doubt on the Court's conclusions regarding either the relevant standard for a Section 349-d(7) violation, or the application of that standard to the contract materials that Schafer received; it only disagreed with the Court's reliance on the "documents that Direct Energy attached to its . . . motion to dismiss." *Schafer II*, 845 F. App'x at 82.

As discovery has revealed, the two sets of documents that Direct Energy submitted at the motion-to-dismiss stage are, in fact, the same "Welcome Contract Materials" and "Renewal Contract Materials" that it sent to Schafer when he enrolled and when he renewed, respectively. *Compare* ECF No. 14-13, *with* ECF No. 50-3 at 20-27. *Compare* ECF No. 14-14, *with* ECF No. 50-3 at 29-34. Accordingly, the Court's prior reasoning applies with equal force and mandates dismissal of Schafer's claim.[4] *See Schafer I*, 481 F. Supp. 3d at 145-51.

If anything, the Court now finds its conclusion reinforced by Schafer's deposition testimony in the related electricity action.[5] In *Schafer I*, the Court was skeptical that any variable-rate provisions contained in the boilerplate terms and conditions were clear and conspicuous, insofar as they were "buried among other boilerplate terms, [] not set out or highlighted, and [] the same font as the surrounding material." *Id.* at 148. But the Court found that the materials were rendered sufficient by the inclusion of easy-to-read charts that clearly disclosed the fact of the variable-rate plans. *See id.* at 149-50. In his deposition testimony, Schafer admitted that upon review of even just the boilerplate terms and conditions, he was able to discern fairly quickly that

---

[4] Schafer makes several arguments as to why the Court's prior legal analysis was incorrect. *See* ECF No. 52 at 8-15. Having considered those arguments, the Court sees no reason to depart from its earlier rationale.

[5] The electricity-plan materials are substantially identical to the natural-gas plan materials, and they are available in the Northern District of New York case of *Forte v. Direct Energy Servs., LLC*, No. 17-CV-264, at Docket Entry 131-6, pages 18-24 and 46-50.

7

he would be charged a variable rate upon renewal. *See generally* ECF No. 50-3 at 2095-99. This only bolsters the Court's conclusion that Direct Energy's disclosures were sufficient under Section 349-d(7). *Accord Forte v. Direct Energy Servs., LLC*, No. 17-CV-264, 2021 WL 6202592, at *5-6 (N.D.N.Y. Dec. 29, 2021) (concluding, in light of Schafer's deposition testimony, that Direct Energy "ha[d] shown that the language in its [electricity] Agreements was clear and conspicuous and not in violation of GBL § 349-d(7)").

In light of the undisputed facts, the Court's prior legal analysis, and Schafer's deposition testimony, the Court concludes that neither the "Welcome Contract Materials" nor the "Renewal Contract Materials" violates Section 349-d(7). Accordingly, Direct Energy is entitled to summary judgment on Schafer's statutory claim.

## II. Schafer Presents Insufficient Evidence of Causation to Maintain a Private Right of Action under Section 349-d(10)

Direct Energy also argues that Schafer has presented insufficient evidence to satisfy causation. *See* ECF No. 50-1 at 29-30. The Court agrees.

New York law provides that "any person who has been injured by reason of any violation of [Section 349-d] may bring . . . an action to recover his or her actual damages or five hundred dollars, whichever is greater." N.Y. Gen. Bus. Law § 349-d(10). This provision mirrors the private right of action contained in Section 349 of New York's General Business Law, which prohibits deceptive business acts or practices. *See id.* § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater."). It is thus fair to presume that the two sections share a similar framework.[6]

---

[6] Schafer asserts that the two provisions do not share a similar framework with respect to causation because Section 349 "depends on a person seeing the deceptive material," whereas a Section 349-d(7) violation is more akin to "an omission rather than a deception." ECF No. 52 at 23. The two statutes cannot be distinguished on that basis. Under

8

As the Second Circuit has noted, the "injury" component of a Section 349 claim constitutes a "causation requirement: [t]he plaintiff must show that the defendant's material deceptive act caused the injury." *Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (summary order) (internal quotation marks omitted). The *Grossman* case is illustrative. There, the plaintiffs alleged that GEICO had promulgated misleading advertisements, and they sued, alleging a violation of Section 349. The Second Circuit agreed that the claim was properly dismissed because the plaintiffs had not alleged causation: although the plaintiffs alleged that GEICO had made misleading advertisements, they did "not allege that they saw GEICO's advertisements." *Id.* Consequently, the plaintiffs could not "show that the allegedly misleading advertisement caused their injury, and, for that reason—at a minimum—they ha[d] not stated a plausible claim under GBL Section[] 349." *Id.*

The same analysis applies to Schafer's claim and mandates its dismissal. Schafer alleges that Direct Energy sent him contract materials wherein all variable charges were not "clearly and conspicuously identified," in violation of Section 349-d(7). Even if the Court were to assume the truth of that allegation—*but see* Section I, *supra*—to maintain a private right of action, Schafer would need to show that he was injured "by reason of" that Section 349-d(7) violation. *See* N.Y. Gen. Bus. Law § 349-d(10). In this case, Schafer presents no evidence that he ever read, reviewed or was otherwise exposed to the "Welcome Contract Materials" or "Renewal Contract Materials." Absent evidence that he was ever exposed to the materials, Schafer fails to present sufficient evidence of a "connection" between the statutory violation (the inconspicuousness of any variable-rate provisions) and his injury (the costs resulting from his variable-rate plan). *Gale v. IBM Corp.*,

---

Section 349, a deceptive act may be "a representation *or an omission*," and in either scenario the plaintiff must prove that he "suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (emphasis added).

781 N.Y.S.2d 45, 47 (2d Dep't 2004) (plaintiff failed to plead Section 349 claim, where he "nowhere state[d] in his complaint that he saw [the misleading] statements before he purchased" the product); *see also Rolland v. Spark Energy, LLC*, No. 17-2680, 2019 WL 1903990, at *4 (D.N.J. Apr. 29, 2019) (causal nexus between defendant's representations and plaintiff's decision to purchase defendant's electricity services was not sufficiently alleged, where plaintiff "did not plead any facts demonstrating that she saw, read, heard, or in any way took [the terms of service or renewal notice] into consideration" before renewing).

Schafer counters that "it is irrelevant whether [he] entered into variable rate pricing contracts . . . *because* of the lack of clarity and conspicuousness. Instead, what is relevant is that [he] paid monies to [Direct Energy] on variable rate contracts that did not clearly and conspicuously disclose variable rate pricing." ECF No. 52 at 22 (internal citation omitted). To the extent Schafer is arguing that he need not demonstrate a causal connection between Direct Energy's violation and his injury, he is incorrect.

Under Section 349, it is not enough to prove that a defendant engaged in a materially deceptive act; a plaintiff must show that he "suffered injury as a result of the deceptive act." *Stutman*, 95 N.Y.2d at 29. The same requirement exists for a Section 349-d claim; it flows ineluctably from Section 349-d(10)'s limitation on the private right of action to those individuals who have been injured "by reason of" a Section 349-d(7) violation. To be sure, Schafer is not required to prove justifiable reliance, *i.e.*, that he would not have "entered into the transaction" but for Direct Energy's allegedly faulty disclosures. *Id.* at 30. But that is distinct from the essential requirement that he must prove that he incurred some actual injury "because of [the] defendant's deceptive act." *Id.*

10

Ultimately, the element of causation is straightforward in this context. The evil addressed by Section 349-d(7) is the "bait-and-switch" tactic of promising low fixed rates while embedding variable-rate language in the "unfathomable fine print" of a contract. *Schafer I*, 481 F. Supp. 3d at 146 (discussing legislative history). A plaintiff could maintain a claim if he reviewed his contract materials but, because the variable-rate provisions were indiscernible amongst the "unfathomable fine print," he was misled into believing that he would retain a fixed-rate plan upon renewal, thereby suffering pecuniary harm from all subsequent variable-rate charges. *Id.* It is no different than any other sort of deceptive practice wherein a person is deceived in connection with a consumer transaction and incurs extra fees as a result. *See, e.g.*, *Stutman*, 95 N.Y.2d at 30. Here, Schafer does not present sufficient evidence that the contract materials at issue deceived *him* and thereby caused *him* an injury. The mere fact that Direct Energy allegedly committed a statutory violation does not permit Schafer to maintain a private right of action, as Section 349-d(10) makes clear. *Cf. Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-57 (1999).

Therefore, the absence of evidence that Schafer reviewed or considered the materials—and the corresponding absence of evidence that the materials deceived him and caused him injury—is fatal to his claim. *See Gale*, 781 N.Y.S.2d at 47 ("If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury.").

Schafer makes one other argument that merits brief comment. Schafer contends that he is under no obligation to prove that he "was injured by reason of [Direct Energy's] conduct" because it is Direct Energy that has moved for summary judgment. *See* ECF No. 52 at 19-20 & n.5. As the party with the burden of proof at trial, however, Schafer does have an obligation on summary judgment: "If the non-moving party bears the burden of proof at trial, it also bears the burden on a

11

motion for summary judgment of initially pointing to evidence sufficient to prove each element of its claim." *CVD Equip. Corp. v. Taiwan Indus. Glass Corp.*, No. 10-CV-573, 2014 WL 641420, at *4 (S.D.N.Y. Feb. 19, 2014); *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) ("A defendant is entitled to summary judgment where the plaintiffs have failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim on which the plaintiffs bear the burden of proof." (internal quotation marks and brackets omitted)). Accordingly, to avoid judgment as a matter of law, it was incumbent upon Schafer to present sufficient evidence of causation—*i.e.*, that the inconspicuousness of Direct Energy's variable-rate disclosures caused him injury. As discussed above, he has failed to meet that burden because he has failed to cite any admissible evidence to show that he reviewed, or was otherwise exposed to, Direct Energy's contract materials such that those materials deceived him and caused him injury.[7]

Summary judgment is therefore appropriate on this basis as well.

## CONCLUSION

For the reasons stated herein, Direct Energy's motion for summary judgment (ECF No. 50) is GRANTED. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: October 4, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[7] The Court notes that it is under no obligation to "scour the record on its own in a search for evidence" when a plaintiff fails to present it. *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013).